**UNITED STATES of America,**
**Plaintiff-Appellant-Cross-Appellee,**

v.

**AUTHOR SERVICES, INC.,**
**Defendant-Appellee-Cross-Appellant.**

Nos. 85–6194/6195.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1986.

Decided Dec. 1, 1986.

John Dudeck, Michael L. Paup, Chief, App. Section, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant-cross-appellee.

Michael L. Hertzberg, New York City, Stephen A. Lenske, Mark L. Edwards, Lenske, Lenske & Heller, Woodland Hills, Cal., for defendant-appellee-cross-appellant.

Before TANG and BRUNETTI, Circuit Judges, and JAMESON,[*] District Judge.

TANG, Circuit Judge:

The United States petitioned the district court to enforce an Internal Revenue Service (IRS) summons served on Author Services, Inc. (ASI) in connection with a criminal tax investigation of L. Ron Hubbard.[1] ASI contended the IRS was not acting in good faith and sought an evidentiary hearing to support that contention. ASI appeals from the district court's denial of its request for an evidentiary hearing and from the enforcement order; the United States appeals from the district court's restriction on the IRS's use of the documents, prohibiting release of the documents to any other government agency without a court order unless criminal tax prosecution is sought. We affirm.

## BACKGROUND

In August 1984 the Los Angeles District Office of the IRS began a tax investigation of individuals connected with the Church of Scientology (Church), including L. Ron Hubbard. On September 13, 1984 the IRS served an administrative summons in connection with the Hubbard investigation on ASI, a literary business management company whose principal client was L. Ron Hubbard.

ASI refused to produce the documents because it could not get the IRS to agree to a nondisclosure agreement specifying the IRS would not provide copies of the produced documents to persons not involved in the IRS investigation without ASI approval. The IRS commenced judicial process to enforce the summons on April 3, 1985.

The Church of Scientology moved to intervene and the district court granted the motion on June 10, 1985. ASI and the Church both opposed enforcement on the ground that the IRS was seeking enforcement in bad faith. On June 10, 1985 the district court held a hearing on enforcement of the summons. The court denied ASI's request for an evidentiary hearing, taking judicial notice of the fact that the evidentiary hearing held April 29 and 30, 1985 in the related case, *United States v. Zolin,* (appeal pending, 9th Cir. Docket Nos. 85–6065, 6105), had produced no evidence of IRS bad faith. The court ordered the summons enforced but added that no documents produced could be delivered by the IRS to any agency or individual without

---

* Honorable William J. Jameson, Senior U.S. District Judge for the District of Montana, sitting by designation.

1. During the pendency of this appeal, L. Ron Hubbard died, and ASI argues that the cause is now moot because the IRS summons was issued in furtherance of an exclusively criminal investigation. We are persuaded that the investigation of Mr. Hubbard, although primarily criminal in nature, entails essential civil elements as well, which survive his death. The summons seeks documents relating to the financial affairs of L. Ron Hubbard as they pertain to his tax liability or to any offenses connected with internal revenue laws. Therefore, this appeal is not moot.

a court order unless criminal tax prosecution is sought.

## DISCUSSION

### I. Evidentiary Hearing

 This court in 1975 approved the use of limited evidentiary hearings in summons enforcement proceedings for the purpose of sifting out "those rare cases where bald allegations of harassment or improper purpose can be substantiated." *United States v. Church of Scientology,* 520 F.2d 818, 824 (9th Cir.1975). When allegations in the pleadings are sufficient to raise doubt about the Service's purposes the district court may hold a hearing of the scope it decides is necessary. *Id.* at 825. We review the decision to deny an evidentiary hearing for abuse of discretion. *United States v. Samuels, Kramer and Co.,* 712 F.2d 1342, 1345 (9th Cir.1983).

 In this case the district court denied the request on the ground that the bad faith allegations had been raised and held to be insubstantial in the related *Zolin* case, in which the court recently had held an evidentiary hearing. The court took judicial notice of the facts developed in the *Zolin* hearing, and in doing so it did not abuse its discretion. It is well established that a court may take judicial notice of its own records. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 157, 89 S.Ct. 935, 942, 22 L.Ed.2d 162 (1969); *Diamond v. Pitchess,* 411 F.2d 565, 566 (9th Cir. 1969). ASI argues the district court relied on the doctrine of collateral estoppel rather than judicial notice in deciding not to hold an evidentiary hearing. This contention is without merit. A decision to hold a hearing rests on a court's determination that sufficient doubt about the IRS's purpose has been raised to require further investigation. In this case, the district court had no doubts about the legitimacy of the IRS's purpose because of the facts elicited during the *Zolin* hearing. The facts were properly relied on under the doctrine of judicial notice, and the court did not invoke the doctrine of collateral estoppel at all.

The factual allegations in *Zolin* were identical to those raised by ASI. Specifically ASI sought to prove the IRS's bad faith by showing that: (1) the IRS had improperly advised Department of Justice (DOJ) attorneys of the time and place (Ventura Holiday Inn) of scheduled witness interviews, with the consequence that DOJ attorneys interviewed the witnesses on the same day, allegedly under color of IRS authority; and (2) the IRS had improperly released information to a third party, Gerald Armstrong, who allegedly was involved in a plot to discredit an ASI officer. Both of these allegations were made during the *Zolin* hearing by the Church's attorney. The hearing consisted of a one hour and fifteen minute examination of Phillip Xanthos, IRS Branch Chief of the Los Angeles Criminal Investigation Division. Xanthos denied there was any communication with the DOJ about the Ventura interviews and he denied that Armstrong was on the IRS payroll. The court was convinced by his testimony that the summons was validly issued pursuant to a bona fide criminal tax investigation and that there was no improper purpose.

The judge then said, at the June 10 *ASI* proceeding, that he saw no need for another hearing and that nothing ASI wished to offer as evidence would change his mind. ASI argued that it wanted to cross-examine Kruse, a DOJ attorney, and Lipkin, the IRS agent responsible for setting up the Ventura interviews, because they could shed more light on the bad-faith claim arising out of that incident. The judge indicated the matter had been litigated far beyond what was reasonable in a proceeding of that sort. Kruse's Declaration expressly stated he had not used any IRS authority or legal process to assist in his defense of the DOJ in the Church tort suit against the Government. Lipkin's Declaration similarly denied that DOJ had ever asked him to summon any witness.

Given the facts presented to the court, it did not abuse its discretion in refusing to hold another hearing.

**1524**

## II. Summons Enforcement

■ This court reviews a summons enforcement decision under the clearly erroneous standard. *Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir.1985). The district court must make four essentially factual determinations in deciding to enforce a summons: (1) whether the investigation is conducted for a legitimate purpose; (2) whether the material sought is relevant to that purpose; (3) that the IRS does not already possess the material sought; and (4) that the IRS has complied with administrative regulations. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). These substantive standards remain the same after the 1982 procedural changes. *Ponsford*, 771 F.2d at 1307 (citing *La Mura v. United States*, 765 F.2d 974, 977 n. 2 (11th Cir.1985)).

■ The only enforcement requirement in dispute is the purpose of the investigation. ASI urges that the entire investigation was being conducted in bad faith, for the collateral purpose of discovering information which could be useful to the DOJ in defending in several on-going civil suits brought by the Church. ASI contends that the district court applied the wrong standard in evaluating the purpose of the investigation. ASI argues the court improperly focused only on the good faith of this particular summons rather than of the investigation as a whole. The court said during the *Zolin* hearing that "this case is not going to get expanded into a full-scale investigation of how the IRS gets its information. The question is whether this summons proceeding is a legitimate part of a legitimate tax investigation." The court asked on several occasions why questions about the circumstances of the Ventura interviews were relevant to the good faith of the ASI summons. Nevertheless, the court heard the examination of Xanthos and reviewed all the pleadings and concluded the summons met the *Powell* standards because no evidence had been adduced which showed improper purpose.

ASI relies on *United States v. La Salle National Bank*, 437 U.S. 298, 317, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978) for its argument that the IRS's bad faith is evidenced by its having become an information-gathering agency for other departments. The Supreme Court cited information gathering as an example of bad faith, but it also said the party resisting enforcement must "disprove the actual existence of a valid civil tax determination or collection purpose by the Service." *Id.* at 316, 98 S.Ct. at 2367. In this case, the district court was convinced there was a tax investigation in progress and it was not persuaded that the IRS was improperly collecting information for the DOJ. ASI insists the appearance of DOJ attorneys at the witness interview scheduled by IRS proves there was improper exchange of information or abuse of summons authority. The district court reasoned the dual interviews could have been scheduled at the request of the witnesses, and at any rate the incident did not prove the IRS had the illicit motive of gathering information for the DOJ.

It is crucial to note that in *La Salle National Bank* the Court stressed that bad faith is found only if the IRS abandons its *institutional* responsibility to determine and collect taxes, not if a single agent is actuated by an impermissible motive. *Id.* at 316, 98 S.Ct. at 2367. In this case the individual agents denied any purpose to funnel information to the DOJ and, more importantly, there was no evidence at all disproving the actual existence of a valid IRS purpose.

■ ASI also contends the IRS improperly disclosed information to a third party, Armstrong. This claim was not thoroughly explored in the *Zolin* hearing, but all Declarations by the agents involved indicate Armstrong was merely a witness interviewed by the IRS, and that there was no improper exchange of information. ASI relies on a Declaration by John Peterson, an attorney defending the Church in a suit

in Oregon. Nothing in the Declaration leads to the conclusion Armstrong was paid by the IRS to perform "dirty tricks" or that the IRS improperly revealed confidential information to him. However, even if ASI could prove this had occurred, the remedy would lie, not in barring enforcement of this summons, but in a civil action under 26 U.S.C. § 7431 (1982), or in seeking criminal sanctions under 26 U.S.C. § 7213 (1982). *United States v. Barrett*, 787 F.2d 958, 961–62 (5th Cir.1986). Unlawful disclosure of information in the past "presents no evidence of bad faith or lack of legitimate purpose in *this* case." *United States v. Texas Heart Institute*, 755 F.2d 469, 480 (5th Cir.1985) (emphasis in original).

The district court's decision to enforce the summons was not clearly erroneous.

### III. Authority to Restrict Disclosure

District courts have jurisdiction to enforce IRS summons under 26 U.S.C. §§ 7402(b) and 7604(a) (1982). The Government argues that the court exceeded its authority by placing restrictions on the IRS's use of the information obtained through enforcement of the ASI summons.[2] The Government says the effect of the court's restriction is to enjoin the IRS from disclosing return information and that IRS disclosure is exclusively regulated by 26 U.S.C. § 6103 (1982). Because Congress has enacted a comprehensive scheme regulating disclosure, the Government urges that the district court was without authority to impose these restrictions.

 The Government cites no case, and we have discovered none, which so restricts the authority of a district court. In effect, the Government says the court is limited to either enforcing a summons or denying enforcement. Clearly this is not the case. A district court is required by

*Powell*, 379 U.S. at 57–58, 85 S.Ct. at 254–55, to make a factual determination of whether the IRS "is pursuing the authorized purposes in good faith." *LaSalle National Bank*, 437 U.S. at 317–18 n. 19, 98 S.Ct. at 2368 n. 19. A court may find an abuse of process when a summons is issued for an improper purpose, *Powell*, 379 U.S. at 58, 85 S.Ct. at 255, but it also has the authority and obligation to prevent future abuses of its process. The terms of an enforcement order rest within the discretion of the district court, *United States v. Vetco Inc.*, 691 F.2d 1281, 1291 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981), and its discretion is "considerable." *United States v. Ruggeiro*, 425 F.2d 1069, 1071 (9th Cir.1970), *cert. denied*, 401 U.S. 922, 91 S.Ct. 863, 27 L.Ed.2d 826 (1971). Courts routinely modify summonses to protect taxpayers' interests. *See, e.g., Dunn v. Ross*, 356 F.2d 664, 667 (5th Cir.1966). This power has been construed to give a court the authority to condition enforcement of a summons on an IRS agreement to cease improper disclosures. *Texas Heart Institute*, 755 F.2d at 481. While we are aware that the Fifth Circuit has restricted the scope of its holding in *Texas Heart, see Barrett*, 787 F.2d at 961 and n. 5, 963–64 (Brown, J., dissenting), we believe the *Texas Heart* rule to be sound and applicable to the facts of this case. When complete denial of enforcement is not seen as the proper remedy for alleged past unlawful disclosures, a district court "may require the IRS to abide by the disclosure provisions of the Internal Revenue Code before it enforces the summonses." *Texas Heart Institute*, 755 F.2d at 481.

Of course the district courts also have the broad authority, under 26 U.S.C. § 7402(a) (1982), to issue any orders or decrees "as may be necessary or appropriate for the enforcement of the internal revenue laws."

---

**2.** The Order says: "The documents produced in response to the summons shall not be delivered by the IRS to any other government agency

unless criminal tax prosecution is sought or an order of court is obtained."

██ In this case, the district court assured the IRS it would authorize any disclosure permitted under the law. The court believed its order was necessary because of the many levels of on-going litigation between the Church and the Government which created the real fear "that information acquired for one purpose may be in effect used for civil discovery in the other." In other words, as in *Texas Heart Institute*, the district court did not think the bad faith allegations of ASI sufficiently disproved the legitimate purpose of the IRS investigation, but it thought some control over future dissemination of that information was warranted by the peculiar facts of the case. Rather than being an abuse of discretion, we consider this restriction to be a wise exercise of control, serving the interests of judicial economy in a case in which continuing litigation between the Church and the Government is inevitable.

██ The Government also argues that since the court's order is, in effect, an injunction prohibiting disclosure, it violates the Anti-Injunction Act, 26 U.S.C. § 7421(a) (1982), which prohibits judicial interference with the process of determining tax liability. The statute has been construed to prevent equitable relief which restrains assessment or collection of a tax. *Blech v. United States*, 595 F.2d 462, 466 (9th Cir. 1979). The court's order in this case, restricting disclosure of summoned information to other agencies only to the extent that a court order is necessary, does not restrain the assessment or collection of tax liability. We hold that the district court has properly fashioned a remedy to assure IRS compliance with the provisions of the Internal Revenue Code.

## CONCLUSION

There was no abuse of discretion or error in the district court's decision. The district court's order enforcing the summons against ASI and restricting disclosure of the summoned information is

AFFIRMED.