**UNITED STATES of America; Leslie M. Nishimura, Revenue Agent of the Internal Revenue Service, Plaintiffs–Appellants,**

v.

**Laddie F. JOSE, Trustee of Jose Business Trust and Jose Family Trust, Defendant–Appellee.**

No. 93–17028.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1995.

Decided Dec. 7, 1995.

---

John A. Dudeck, Tax Division, United States Department of Justice, Washington, D.C., for plaintiffs–appellants.

Benjamin B. Cassiday III, Honolulu, Hawaii, for defendant–appellee.

Before: KOZINSKI and HAWKINS, Circuit Judges, and SILVER,* District Judge.

Dissent by Judge SILVER.

## ORDER

The Internal Revenue Service appeals the district court's order conditionally enforcing two summonses served on Laddie F. Jose as Trustee of the Jose Business Trust and Jose Family Trust. The IRS challenges the condition of enforcement that requires the Examination Division to give Jose five days notice before disclosing to any other division of the IRS documents produced by Jose. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we dismiss the appeal as not ripe.

The record indicates that the IRS represented to the district court that the documents requested of Jose were for civil tax examination purposes only, not for a criminal investigation. The record does not indicate that the Examination Division has attempted to disclose the documents to any other IRS division, thereby triggering the five-day notice requirement. Thus, any detrimental impact the district court's order may have on the IRS's investigation is, at this time, purely speculative. Accordingly, the IRS's appeal is not ripe for review. The appeal is DISMISSED.

SILVER, District Judge, dissenting:

Because I would decide this case on the merits and not dismiss it for lack of ripeness, I respectfully dissent.

The majority opinion is puzzling.

Courts have invoked the ripeness doctrine and refused to decide matters which would involve "entangling themselves in abstract disagreements...." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Generally, those cases involve situations with very uncertain, remote or contingent events. *Dames & Moore v. Regan*, 453 U.S. 654, 687–91, 101 S.Ct. 2972, 2991–92, 69 L.Ed.2d 918 (1981); *Webster v. Mesa*, 521 F.2d 442, 444 (9th Cir.1975) (a challenge to a statutory provision requiring independent candidates to win a total percentage vote in the primary election was not ripe because no independent candidate had ever been disqualified by the statute which made the issue hypothetical). Courts have also relied on the ripeness doctrine in refusing to hear cases where the facts needed further development. *Wheeler v. Barrera*, 94 S.Ct. 2274, 94 S.Ct. 2274, 41 L.Ed.2d 159 (1974) (the state should be given the opportunity to comply with a federal program before a decision on compliance could be made). Cases which do not have a concrete impact on the parties, *Exxon v. Heinze*, 32 F.3d 1399, 1404 (9th Cir.1994); or where administrative or governmental action is not final, *Kinzli v. Santa Cruz*, 818 F.2d

---

\* Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by designation.

1449, 1454 (9th Cir.1987), have been found not to be ripe for decision.

But where the facts are clear and the district court's decision is erroneous the judiciary has a duty not to interpret the doctrinal roots of ripeness simply to avoid making a decision. Although it is now clear that the district court has abused its discretion, if the IRS proposes to transfer the case to the Criminal Investigation Division, the majority would have the Service make a second trip to this Court to argue the identical position already made in briefs and at oral argument which established the district court's error. The decision is invalid now and does not need the passage of time to enhance or remedy its invalidity. It is wrong today and it will be wrong tomorrow.

Furthermore, the ripeness doctrine recognizes that there is a need to decide a case when the prospect or fear of future events may have a real impact on the present affairs of the parties and cause potential harm. *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655, 657 n. 1 (zoning ordinance of itself affected adversely the value of land and thereby constituted a sufficient threat of injury), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 731, 50 L.Ed.2d 748 (1976); *Assiniboine & Sioux Tribes v. Board of Oil and Gas*, 792 F.2d 782, 788 (9th Cir.1986). In this case the restrictions imposed by the District Court Order have a chilling effect on the IRS's ability to conduct effective tax investigations, particularly in the criminal context. *See* Herbert L. Zuckerman, *Check List of Do's and Don'ts in Handling a Tax Fraud Investigation*, 29 NYU Instit. on Fed. Taxation, 987, 998 (1971) (time is a taxpayer's ally). To require the IRS to provide notice of a proposed transfer to the Criminal Investigation Division and then suspend the investigation for five days would communicate to the world that a criminal investigation had ensued which certainly could impede and compromise that investigation. It does not take a soothsayer to prognosticate what would happen if the IRS decided to convert the civil investigation to a criminal one and was then required to notify the taxpayer, now a putative defendant, of such proposed transfer. The five-day waiting period would inevitably destroy the effectiveness of any contemplated confidential criminal investigative tool such as a search warrant, arrest warrant, wire interception, or the initiation of a grand jury investigation.

This case is mature, fully developed, seasoned, ready and ripe for picking.

### PROCEDURAL BACKGROUND

The IRS has appealed the District Court Order adopting a Magistrate's Order that recommended enforcement of two summonses served on Laddie F. Jose as Trustee of the Jose Business Trust and Jose Family Trust, the Respondent. The IRS challenges the condition appended by the district court to the enforcement of the summonses. The court held that the IRS Examination Division was required to notify the Respondent five days in advance of circulating, transferring or copying any documents received as a result of the summonses to any other division of the IRS, including the Criminal Investigation Division.

### FACTUAL BACKGROUND

The dispute began when a revenue agent sought to review certain documents relating to various other civil investigative issues. The Respondent submitted a copy of the trust instrument to the agent but restricted him from photocopying and disclosing it to anyone without the trustees' permission. The agent initially agreed but then returned the document to Respondent explaining that it was impossible for him to complete this investigation with such a restriction. Two IRS summonses followed and were served on the Respondent for testimony and production of documents. He refused, and the IRS brought an action to enforce the summonses. At the hearing the IRS established as required by law four criteria: (1) a legitimate purpose for the investigation, (2) an inquiry relevant to the purpose, (3) that the information sought was not already in the possession of IRS and (4) that the IRS had complied with the administrative steps required by the code. The Respondent did not dispute the agent's declaration that the summonses were for civil tax purposes, but he wanted protection in the event that the records were to be

given to the United States Attorney's Office for criminal prosecution. The magistrate, however, issued an even broader order. The order precluded the IRS from circulating, transferring or copying the summoned documents to any other division of the IRS including but not limited to the Criminal Investigation Division without five days prior notice to the Respondent to allow him to dispute the proposed action. The district court adopted the magistrate's decision and found that the restriction was not excessive because it was temporary.

Importantly, the district court found that the government had met its burden of showing that the summonses were enforceable and held that they should be enforced, but also found that there was no prejudice to the government to provide notice that a criminal investigation had ensued. The opinion read that if the Examination Division of the IRS wished to circulate, transfer or copy the subject documents to any other division of the IRS, including but not limited to the Criminal Investigation Division, the IRS was required to notify Respondent of such intention, and Respondent was given five days prior to any such circulation or transfer to file and serve a motion for an order prohibiting the intended action. The district court reasoned that the restrictions against the IRS's internal use of the summoned information were justified because the statute relating to summonses "does not address whether the IRS can seek documents for one stated purpose and then transfer the documents to another division for another unstated purpose" and the restriction was temporary. In so ruling, the court held that the IRS had not demonstrated that the requirements for summons enforcement were satisfied with regard the use of the summoned information in a *criminal* investigation and that the Respondent was entitled to object to the use of the information should the purpose of the investigation change to a criminal one.

### SUMMONS ENFORCEMENT

The summons power is an investigative tool provided by Congress to enable the IRS to discharge its duty to make determinations and assessments of all taxes imposed by the Internal Revenue Code. *See Donaldson v. United States,* 400 U.S. 517, 523–24, 91 S.Ct. 534, 538–39, 27 L.Ed.2d 580 (1971). If the summoned party refuses to produce requested documents the government must seek judicial enforcement. *See* 26 U.S.C. §§ 7402 and 7604. This court reviews a summons enforcement decision under the clearly erroneous standard. *United States v. Author Services, Inc.,* 804 F.2d 1520, 1524 (9th Cir. 1986). The government is required to meet four essential factual standards set forth in *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964), that is, (1) that the investigation is conducted for a legitimate purpose; (2) that the materials sought are relevant for that purpose; (3) that the IRS does not already possess the materials sought; and (4) that the IRS has complied with administrative regulations. *Id.* at 58, 85 S.Ct. at 255; *Author,* 804 F.2d at 1524. Both the magistrate and district court found that the government had met its burden of establishing that the summonses were enforceable.

This court has held that restrictions may be placed on IRS summonses.[1] In *Author,* 804 F.2d 1520 (9th Cir.1986) the Ninth Circuit, relying on two Fifth Circuit decisions which were later overruled by the Fifth Circuit, held that the district courts have "considerable discretion" in establishing the terms of summonses. The court stated: "[C]ourts routinely modify summonses to protect taxpayers' interests.... This power has been construed to give a court the au-

---

1. In contrast to the Ninth Circuit, the Fifth Circuit held in the decision *en banc* of *United States v. Barrett,* 837 F.2d 1341 (5th Cir.1988) that a district court could not conditionally enforce an IRS summons. The court "refused to impose limitations upon the IRS' summons authority unless it found explicit congressional directives to do so." *Id.* at 1349. The Supreme Court of the United States was equally divided on the question when it affirmed the Ninth Circuit in

*United States v. Zolin,* 491 U.S. 554, 560–62, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989); *Church of Scientology of California v. United States,* 506 U.S. 9, 14–15 n. 7, 113 S.Ct. 447, 451 n. 7, 121 L.Ed.2d 313 (1992). Because the affirmance in *Zolin* was evenly divided on the disclosure issue, the affirmance is not "authority for the determination of other cases, either in this or in inferior courts." *Hertz v. Woodman,* 218 U.S.

thority to condition enforcement of a summons on an IRS agreement to cease *improper* disclosures." *Id.* at 1525 (emphasis added). *See also, United States v. Zolin,* 809 F.2d 1411 (9th Cir.1987). This court, however, has not upheld all limitations imposed on the enforcement of summonses. In *United States v. Abrahams,* 905 F.2d 1276, 1286–87 (9th Cir.1990) it was first recognized that the summons enforcement hearing is narrowly defined and carefully circumscribed. " 'From inception through hearing;' the proceeding '[is] strictly limited to granting or denying enforcement of the terms of the specific summons.' " *Id.* at 1287 quoting from *United States v. First National State Bank of New Jersey,* 540 F.2d 619, 624–25 (3d Cir.1976). It was then held that the district court's restriction that IRS agents investigating a taxpayer could not interview his clients without the taxpayer's presence was an abuse of discretion in setting the terms of the enforcement order. *Id.* at 1286–87. The decision clearly distinguished between a valid restriction on a summons which is related "to the enforcement of the summons" and an invalid restriction encompassing an inquiry into the IRS investigation. *Id.* at 1287.

The district court in setting the restrictions in this case appeared to be under the misimpression that the law does not allow the IRS to seek documents for one stated purpose and then without notice transfer the documents to another division for another purpose and in particular to the Criminal Investigation Division for purposes of initiating a criminal investigation.[2] However, in *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) the Supreme Court specifically rejected the argument that a summons could not be used in aid of an investigation that had the potential of resulting in the criminal prosecution against the taxpayer. The Supreme Court stated:

> *Congress clearly has authorized the use of the summons in investigating what may prove to be criminal conduct.* The regulations are positive. (citations omitted) The

underlying statutes are just as authoritative. Section 6659(a)(2) of the Code defines the term "tax," as used in the Code and, hence, in the authorizing § 7602, to include any addition or penalty. Section 7602 contains no restriction; further, it has its ascertainable roots in the 1939 Code's § 3614 and, also, § 3615(a)-(c), which, by its very language and by its proximity to § 3616 and § 3654, appears to authorize the use of the summons for investigation into criminal conduct. There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance. (citations omitted) *To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forgo either the use of the summons or the potentiality of an ultimate recommendation for prosecution.* We refuse to draw that line and thus to stultify enforcement of federal law. (emphasis added)

*Id.* at 535–6, 91 S.Ct. at 544. Indeed "[t]his result is inevitable because Congress has created a law enforcement system in which criminal and civil elements are inherently intertwined." *United States v. LaSalle National Bank,* 437 U.S. 298, 309, 98 S.Ct. 2357, 2363, 57 L.Ed.2d 221 (1978); *see also United States v. Cromer,* 483 F.2d 99, 101 (9th Cir. 1973) (IRS summons valid where criminal recommendations were not made until after issuance of the summons); *United States v. Rosinsky,* 547 F.2d 249, 254 (4th Cir.1977) (subsequent recommendation of criminal prosecution does not alter the validity of the IRS summons). Furthermore, Congress has now provided for the use of IRS summonses in tax investigations where the only purpose is to uncover evidence of tax crimes except when the reference of a case to the Department of Justice for prosecution or a grand jury investigation is in effect. *See* 26 U.S.C. § 7602(b). It was undisputed that there was no criminal referral of this case to the Department of Justice. Hence, the possibility

---

205, 213–14, 30 S.Ct. 621, 622–23, 54 L.Ed. 1001 (1910).

**2.** A review of the well written district court decision and the record of the hearing before the

court indicates that the judge did not have the benefit of the compelling argument made on appeal that the notice and five-day waiting period might seriously jeopardize a criminal investigation.

that the IRS might convert the focus of its investigation from a civil purpose to a criminal one did not justify imposing the restriction on the summonses in this case.

Furthermore, the restrictions placed on the summonses in this case exceeded the limited power of the court in granting or denying the enforcement of the summonses. Significantly, the district court found that the IRS met the four standards for enforcement of the summonses. The restrictions placed on the summonses, however, dealt specifically with "the elements of the IRS investigation" prohibited in *Abrahams,* 905 F.2d at 1287. It is easily imaginable how the restriction could hamper a criminal investigation which may emerge during the civil investigation if the IRS were required to notify the taxpayer of its intention to redirect the investigation to the Criminal Division and then *wait* five days for an objection. During that five-day period of time despite the anticipated need to seek search warrants, arrest warrants, wire interceptions, or to initiate an undercover or a grand jury investigation the government would be paralyzed and precluded from taking any such action during the holding period. The restriction could well shatter any possibility of an effective criminal investigation and potential prosecution.

The Respondent argues that this court in *Author* and *Zolin* upheld comparable district court orders restricting the IRS from delivering documents which were produced in response to a summons to any other government agency. Significantly, however, those orders expressly *excluded* disclosures relating to criminal tax prosecutions from the scope of the restrictions.[3]

Finally, the majority opinion produces the anomalous result that the IRS, with significant congressionally created powers of civil and criminal law enforcement, faces a real threat of compromising a criminal investigation because it employs one of those powers—a summons. Other law enforcement agencies which commence civil investigations later converted to criminal investigations, however, will pay no such penalty.

I would hold that the district court abused its discretion in restricting the IRS from circulating, transferring or copying the documents produced in response to the summonses to any other division of the IRS, including but not limited to the Criminal Investigation Division, and requiring that the taxpayer be notified and allowed five days prior to any circulation or transfer to file a motion prohibiting the action. This restriction is well removed from the issue of the summons enforcement and, therefore, outside the boundaries of the court's role in those proceedings.

For the foregoing reasons the judgment appealed from should be reversed.

---

3. *Author* and *Zolin* are also distinguishable because there were several cases in different courts in litigation between the taxpayer and various governmental agencies. The decision allowing the restriction in those cases was motivated by the court's "real fear" that the information acquired as a result of the summonses would "in effect" be used for discovery purposes in the other civil matters. *Author,* 804 F.2d at 1526.